UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| 2 WEST, INC., On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIRGIN MOBILE USA, INC., DANIEL H. SCHULMAN, JOHN D. FEEHAN, JR., LEHMAN BROTHERS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, and BEAR, STEARNS & CO. INC.,<br><br>Defendants. | : : : : : : : : : : : : : : : : : : | **ECF CASE**<br><br>**07 CV 11625 (UA)**<br><br>**<u>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, 2 West, Inc., on behalf of itself and all others similarly situated, by its undersigned attorneys, alleges upon personal knowledge as to itself and its own acts, and information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through its attorneys, which included, among other things, a review of public documents and announcements made by the defendants, Securities and Exchange Commission ("SEC") filings, news articles, analysts reports and press releases regarding Virgin Mobile USA, Inc. ("Virgin Mobile" or the "Company"), and plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action brought by plaintiff on behalf of itself and a Class consisting of all other persons and entities who purchased or acquired the publicly-traded common stock of Virgin Mobile pursuant or traceable to the Company's October 11,

2007 initial public offering of 27.5 million shares at $15.00 per share (the "IPO"). In connection with the IPO, defendants made materially false and misleading statements, or omitted to state other facts necessary to make the statements made not misleading, regarding the Company's business, revenue growth, and profitability. As a result of its purchase of Virgin Mobile's common stock, plaintiff and other members of the class suffered damages.

## JURISDICTION AND VENUE

2. The claims alleged herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§ 77k, 77l(a)(2) and 77o].

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, [15 U.S.C. § 77v] and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c). Many of the acts and transactions alleged herein occurred in part in this District. Additionally, several defendants maintain executive offices in this District.

5. In connection with the acts, transactions and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

## THE PARTIES

6. Plaintiff, 2 West, Inc., purchased Virgin Mobile common stock pursuant or traceable to the IPO as detailed in the attached Certification and has been damaged thereby.

7.     Defendant Virgin Mobile is a provider of wireless communication services.  Virgin Mobile has targeted the youth market in the United States with flexible payment plans, including pre-paid, by-the-minute and month-to-month.

8.     Defendant Daniel H. Schulman ("Schulman") was, at all relevant times, Chief Executive Officer and a member of the Board of Virgin Mobile.  Schulman signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

9.     Defendant John D. Feehan, Jr. ("Feehan") was, at all relevant times, the Chief Financial Officer of Virgin Mobile.  Feehan signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

10.    Defendants Lehman Brothers Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Bear, Stearns & Co. Inc. (collectively, the "Underwriter Defendants") are registered broker-dealers and served as the lead underwriters of the IPO.  The Underwriter Defendants maintain their principal executive offices in this district and failed to perform, as required by the federal securities laws, adequate due diligence in connection with their roles of lead underwriters of the IPO.

11.    By reason of their management positions, and/or membership on the Board, and their ability to make public statements in the name of Virgin Mobile, Schulman and Feehan (collectively, "the Individual Defendants") were and are controlling persons, and had the power and influence to cause (and did cause) Virgin Mobile to engage in the unlawful conduct complained of herein.

12.    By reason of their positions with the Company, the Individual Defendants had access to internal Company documents, reports and other information, including the

adverse non-public information concerning the Company's IPO and business, and attended management and/or Board meetings. The Individual Defendants were responsible for the truthfulness and accuracy of the Company's public filings and press releases described herein.

13.     Virgin Mobile, and the Individual Defendants as officers and/or directors of a publicly-held company, had a duty to disseminate promptly truthful and accurate information with respect to the Company and to correct promptly any public filings or statements issued by or on behalf of the Company which had become false or misleading.

## SUBSTANTIVE ALLEGATIONS

### The IPO

14.     On or about October 11, 2007, Virgin Mobile sold 27.5 million shares of its common stock at $15.00 per share in the IPO. In connection with the IPO, the Company filed a Registration Statement and final Prospectus with the SEC on or about October 10, 2007 (the "Registration Statement/Prospectus"). In the IPO, the Company sold 25,467,160 shares and the remaining shares were sold by other shareholders.

15.     The Registration Statement/Prospectus stated that Virgin Mobile has "continued to grow [its] customer base rapidly," and that the Company "enjoys strong brand awareness." The Registration Statement/Prospectus stated, in relevant part:

> We were founded as a joint venture between Sprint Nextel and the Virgin Group and launched our service nationally in July 2002, reaching one million customers in November 2003, within eighteen months of our national launch. We have continued to grow our customer base rapidly and, as of December 31, 2006, we served approximately 4.57 million customers, which we estimate represented approximately a 15% share of the pay-as-you-go market and a 19.0% increase over the 3.84 million customers we served as of December 31, 2005. As of June 30, 2007, we served approximately 4.83 million customers.

4

16. The Registration Statement/Prospectus also discusses several "risk factors" associated with purchase of the Company's shares. One such risk factor discussed was the fact that the Company *may* experience significant fluctuations in revenues and cash flows. The Registration Statement/Prospectus stated, in relevant part:

> We cannot be certain that our MVNO [mobile virtual network operator] business model or any specific products or services will be profitable or competitive in the long-term against larger, facilities-based wireless providers or other MVNOs. We also cannot predict whether our MVNO model will allow us to offer the wireless services that customers may demand in the future. We have experienced, and may continue to experience, significant fluctuations in our revenues and cash flows.

17. In the Registration Statement/Prospectus, the Company discusses its "competitive strengths," among them are a differentiated market approach, strong brand, extensive and efficient distribution and a capital efficient business. The Company also claimed in the Registration Statement/Prospectus that there is a "substantial demand" for the Company's services, stating that:

> We focus on two fast-growing segments of the U.S. wireless market: youth and pay-as-you-go. We believe there is substantial demand in the United States for our straightforward and fun wireless communication services. According to the Yankee Group, in 2006, there were approximately 29.5 million pay-as-you-go wireless customers in the United States and such number is expected to grow to approximately 53.0 million by 2011, representing a 12.4% compound annual growth rate over the same period. We plan to continue to penetrate the youth segment and grow our market share by continuing to tailor our products, services and advertising message to this market, leveraging our brand through new and existing distribution channels and utilizing select youth-oriented media channels that specifically resonate with our target market, such as MTV, Vice, Facebook.com, MySpace.com and outdoor billboards and postings in key trendsetting neighborhoods.

18. The statements contained in ¶¶ 15-17 were materially false and misleading, or omitted to state other facts necessary to make the statements made not misleading, because: (1) the Company had already suffered a larger than expected third

5

quarter loss for the period ended September 30, 2007 (which closed two weeks before the IPO); (2) the Company was experiencing weakening demand for its services at the time of the IPO; (3) the Company's cost structure at the time of the IPO was too high for the Company to operate profitably; and (4) that, as a result of the foregoing, the Registration Statement/Prospectus was false and misleading at all relevant times.

19.     Under applicable SEC rules and regulations, a registration statement is required to disclose known adverse trends in the issuer's business.  Virgin Mobile did not disclose in the Registration Statement/ Prospectus that its net income and revenues for the third quarter 2007, ended on September 30, 2007, were weaker than expected.

**The Company Reports a Net Loss for its Third Quarter**

20.     On November 15, 2007, approximately one month after the IPO, Virgin Mobile announced earnings for the three month period ended September 30, 2007.  The Company reported that its third-quarter loss widened to $7.3 million, compared with a loss of $5.1 million in the year-ago quarter.  The Company also reported a pro-forma loss of $.15 cents per share, compared with a loss of $.10 cents per share in the year-ago period.  Revenue rose year-over-year to $319.5 million from $271 million.

21.     On November 15, 2007, Virgin Mobile held a conference call to discuss its third quarter 2007 results.  During the call, Schulman stated that "weakening" macroeconomic conditions will impact the Company's net services revenues for the rest of 2007.  Schulman further stated that October was weaker than September, but since then the Company's operating results had "stabilized."

22.     On November 16, 2007, in a note to clients, Stanford Group Company analyst Michael Gary Nelson rated the stock a "Hold," citing increasing competition and

6

"weak" net customer additions. Also on November 16th, Soleil Securities Group analyst Todd Rethemeier reiterated his "sell" rating and $10 price target, saying that "2008 guidance seemed well below others' expectations."

23.     On November 16, 2007, shares of the Company's common stock declined approximately 15% to close at $9.19 per share.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities who purchased or acquired Virgin Mobile's publicly-traded common stock pursuant or traceable to the IPO and who suffered damages as a result of the defendants' improper conduct (the "Class"). Excluded are defendants, any entity in which defendants have a controlling interest or is a parent or subsidiary of or is controlled by the Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns of defendants.

25.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes there are, at minimum, thousands of members of the Class who purchased Virgin Mobile's common stock pursuant or traceable to the IPO.

26.     Questions of law and fact are common to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

        a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

  b)  whether the Company issued false and misleading statements in connection with the IPO; and

  c)  whether plaintiff and the other members of the Class have suffered damages and, if so, in what amount;

27. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other members of the Class each sustained damages arising out of the defendants' wrongful conduct in violation of federal law as complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. Plaintiff anticipates no unusual difficulties in the management of this action as a class action.

## NO SAFE HARBOR

30. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking

statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## COUNT I
### VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

31. Plaintiff repeats and reiterates each and every allegation contained above, as if fully set forth herein.

32. This claim is brought by plaintiff, on behalf of itself and other members of the Class, who purchased Virgin Mobile's common stock pursuant to the Registration Statement/Prospectus. Each Class member acquired their shares pursuant to the Registration Statement/Prospectus.

33. Defendants are liable under this claim because the Registration Statement/Prospectus contained untrue statements or omitted material facts required to be stated or necessary to make the statements not misleading.

34. Virgin Mobile is the issuer of the stock sold via the Registration Statement/Prospectus. As issuer of the stock, the Company is strictly liable to plaintiff and the Class for the material misstatements and omissions therein.

35. The Individual Defendants, as signatories to the Registration Statement/Prospectus, as directors, and/or officers and controlling persons of the issuer, owed to the holders of the stock obtained through the Registration Statement/Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement/Prospectus at the time they become effective to ensure that such statements were true and correct and that there was no omission of material facts required

to be stated in order to make the statements contained therein not misleading. Defendants failed to exercise reasonable care in connection with issuing the Registration Statement/Prospectus for the IPO. As such, defendants are liable to the Class.

36. The Underwriter Defendants were the lead underwriters of the Company's IPO and were required to investigate with due diligence the representations contained in the Registration Statement/Prospectus.

37. None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement/Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

38. Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement/Prospectus, which misrepresented or failed to disclosed, *inter alia*, the facts set forth above. By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

39. At the time they obtained their shares of Virgin Mobile, the plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

40. This action is brought within one year after discovery of the untrue statements and omissions in the Registration Statement/Prospectus and within three years of the effective date of the Registration Statement/Prospectus.

41.     By virtue of the foregoing, plaintiff and the other members of the class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from defendants and each of them, jointly and severally.

## COUNT II

### VIOLATIONS OF SECTION 12(a)(2) OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

42.     Plaintiff repeats and reiterates each and every allegation contained above, as if fully set forth herein.

43.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

44.     Defendants were sellers and offerors and/or solicitors of purchasers of the shares offered pursuant to the Registration Statement/Prospectus.

45.     The Registration Statement/Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and concealed and failed to disclose material facts.  The Individual Defendants' actions of solicitation included participating in the preparation and dissemination of the false and misleading Registration Statement/Prospectus.

46.     Defendants owed to the purchasers of Virgin Mobile shares, including plaintiff and other class members, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement/Prospectus contained therein, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of

11

reasonable care should have known of, the misstatements and omissions contained in IPO materials as set forth above.

47. Plaintiff did not know, or in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement/Prospectus.

48. Plaintiff, individually and representatively, hereby offers to tender to defendants those shares which plaintiff and the other Class members continue to own, on behalf of all members of the Class who continue to own such common stock, in return for the consideration paid for those securities together with interest therein. Class members who have sold their Virgin Mobile shares are entitled to rescissory damages.

## COUNT III

### VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT AGAINST THE INDIVIDUAL DEFENDANTS

49. Plaintiff repeats and realleges each and every allegation contained in complaint as if fully set forth herein.

50. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

51. The Individual Defendants, by virtue of their stock ownership, offices, directorships and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Virgin Mobile. The Individual Defendants had the power and influence and exercised the same to cause Virgin Mobile to engage in the acts described herein.

52. By virtue of the misconduct alleged herein, and the primary violation of Section 11 of the Securities Act, the Individual Defendants are liable are liable as control

persons to the plaintiff and the Class for damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on its own behalf and on behalf of the Class, prays for judgment as follows:

(a)     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)     Awarding plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

(c)     Awarding plaintiff and other class members rescission on their Section 12(a)(2) claim;

(d)     Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(e)     Such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by Jury.

Dated:  December 28, 2007                             Respectfully submitted,

**ZWERLING, SCHACHTER & ZWERLING, LLP**

By:     s/ Richard A. Speirs
        Richard A. Speirs (RS8872)
41 Madison Avenue – 32nd Floor
New York, NY 10010
Phone: (212) 223-3900
Facsimile: (212) 371-5969

**ZWERLING, SCHACHTER &
ZWERLING, LLP**
Kevin M. McGee
595 South Federal Highway, Suite 600
Boca Raton, Florida 33428
Phone: (561) 544-2500
Facsimile: (561) 544-2501

*Attorneys for Plaintiff*

## CERTIFICATION OF 2 WEST, INC.

2 West, Inc. ("Plaintiff"), declares that:

1. Plaintiff has reviewed the complaint regarding Virgin Mobile USA, Inc. and has authorized Zwerling, Schachter & Zwerling, LLP to file it on its behalf.

2. Plaintiff did not purchase any security, which is the subject of this action, at the direction of counsel for Plaintiff or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the security that is the subject of this action during the class period are as follows: purchased 500 shares of common stock at $15.00 per share on October 11, 2007 and sold 500 shares of common stock at $14.66 per share on October 15, 2007.

5. During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party for the following class actions filed under the federal securities laws: *In re Lazard Ltd. Sec. Litig.*, 05-cv-5630 (VM) (SDNY); *2 West, Inc. v. Security Capital Assurance Ltd., et al.*, 07-cv-11358 (UA) (SDNY).

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond its *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

Plaintiff, 2 West, Inc., declares under penalty of perjury that the foregoing is true and correct.

December 27, 2007

_____
2 West, Inc.